JUDGE LINDSAY
delivered the opinion oe the court.
Greer drew his bill of exchange upon Caldwell for three thousand two hundred dollars, payable in four months, to his own order, at the Southern Bank at Smithland. Said bill, having been duly accepted, was indorsed by Williams and *476 Bennett to the appellants, Young, McDowell & Co. It matured on the 10th of June, 1860, and payment having been refused upon presentation, was duly protested. Appellants brought suit in the Livingston Circuit Court to recover the amount of said bill from the drawer, acceptor, and indorsers. The appellee Bennett resisted judgment as to himself, denying that the bill had been regularly presented for payment, and denying notice of protest. The action lingered as to him for about nine years, when appellants offered to file an amended petition as against him and others. Their motion to file the same being resisted, was overruled by the court. Finally judgment was rendered against Bennett, and both parties have appealed to this court; appellants claiming that the court below erred in refusing to permit them to file an amended petition as against Cobb and Bennett, and in “failing” to dispose of the property embraced in assignments made by Greer and the firm of Greer & Caldwell for the benefit of their creditors; and Bennett, that the judgment against him was unauthorized by the pleadings and proof. There is nothing in the record to indicate to this court what new matter was set up and relied upon by appellants in the amended petition which they claim was improperly rejected. It is tx*ue the clerk has copied a paper which he designates as such amendment, but it is not identified by a bill of exceptions nor by any order of the court. The record shows that the amended petition was not allowed to be filed; it remained therefore merely a private paper in the hands of appellants. It never became a part of the record of the court, and appellants could not, without authority of court, by lodging it among the papers of this case, make it a part of the same. The judgment must therefore remain undisturbed so far as this branch of the case is concerned; nor can the appellants be seriously injured by this adherence.to this wholesome rule of practice. If the paper before us is in point of fact the rejected amended *477 petition, and the statements therein contained are true, it is still within their power, by a proper proceeding, to subject the lands conveyed to Cobb to the payment of their judgment against Bennett.
The issues raised by Bennett are not so easily disposed of. The bill of exchange was drawn in Louisville and was payable in Smithland, and was therefore a domestic bill. The protest of the notary was unnecessary; and it is insisted that notice of such protest was not equivalent to notice of the dishonor of the bill, which in cases of domestic bills is indispensable.
The petition directly charges that the defendants had due notice of the protest of the bill, but is not explicit as to whether or not said notice conveyed the more important information that it had been dishonored by the failure of the acceptor to pay upon due presentation and demand. Bennett’s answer is equally unsatisfactory. He does not deny notice of the dishonor of the bill, but “denies that he had any legal notice of said bill of exchange having been protested in due time and as required by law.” It is in proof that the bill was in due time presented for payment; that it was dishonored, and was regularly protested for non-payment; and that notices of protest for non-payment were in due time mailed to all the parties to the same.
The difficulty is as to the proper construction to be placed upon this proof. We are referred to the case of Taylor v. The Bank of Illinois, 7 Monroe, 576. In that case it did not “ appear that the notice really apprised the defendants of the dishonor of the bill, but barely that a notary had protested it.” In this case the appellee was notified not only that the notary had protested the bill, but that its non-payment upon presentation and demand was the reason of such protest. No other rational construction can be placed upon the language of the witness Grant, who says that “on the 16th day of June, 1860, notices of protest for non-payment of said bill *478 were received by said Northern Bank in Louisville from a notary in said bank at Smithland; and on the 16th of June, 1860,1 delivered one of said notices of protest to plaintiffs, and on the same day (the 16th) I sent by mail through the post-office at Louisville, postage paid, one of said notices to . . . John Bennett,” etc.
The notices conveyed to the witness the information of the non-payment of the bill, and one of them was forwarded by him to the appellee. It is not required that the notice of the dishonor of the bill shall be set out in any particular form, nor is the party giving the same confined to the use of any specific language. And while it may have been wholly immaterial whether this bill was protested or not, yet inasmuch as it was done, and the notice of such protest gave to the appellee the information of its dishonor, he can not avoid the legal effect of the same, by reason of the fact that the protest itself and the notice of the same were superfluous and unnecessary.
We do not regard the cases of Whiting et al. v. Walker et al., 2 B. Monroe, and of the Bank of the United States v. Leathers, 10 B. Monroe, 64, as conflicting in the slightest degree with this conclusion. In the first of these, cases the question was as to the non-payment of the bill, and in the last as to the proper demand for payment; neither of which could be established by an unnecessary and unauthorized notarial protest; but in this case both the demand and non-payment are clearly established by the deposition of the notary.
We deem it unnecessary to decide whether or not appellants should have been required to prove that Salem was the nearest post-office to Bennett, or the office at which he usually received his mail. He does not deny that he did receive a notice, but says that he did not receive a legal notice. But if the notice mailed to him by the notary was, as this court bolds, a legal and sufficient notice of the dishonor of the *479 bill, tbe channel through which it reached him is wholly unimportant.
It is not within the power of this court to revise the action of the court below on account of its “failure” to dispose of the property embraced in the assignments of Greer, and of Greer and Caldwell. The appeal before us is prosecuted alone from the judgment of August 16, 1869, which merely settles the matters in controversy between the appellants upon the one side and Cobb and Bennett upon the other, and makes no disposition whatever of this property. In fact, so far as it appears from this record, the court below has never rendered a judgment nor made any final order concerning this property. Until some action is taken by that court, either disposing of or refusing to dispose of the same, it is not within the power of this court to take cognizance of the matter. Appeals lie to this court from the judgments or final orders of the Livingston Circuit Court, and not from its mere “failures” to act at the time parties may desire.
In our opinion this record presents no error warranting a reversal of the judgment of the court below; and the same is therefore affirmed upon both the appeal and cross-appeal.